Mr. Miller, you may proceed Sir, is this the first time you have argued in front of me or not? No, I was in Elgin for quite a while, then I was in Chicago for five years. You look vaguely familiar. Yes, I have been here before. Okay, thank you. And as we all have, you may have gotten a little older. Or agnolically challenged. May it please the court, my name is Darren Miller and I represent the appellant James D. Anderson and I'm with the Office of the State Appellate Defender. Your honors, there's no question that all murders are horrific and the legislature recognizes this by imposing a significant sentencing range of 20 to 60 years. However, not all murders are the same and even murderers, people convicted of murder, are entitled to be sentenced based on the seriousness of the offense and with the proper mitigation factors considered. That did not occur here. Regarding the statutory factors of mitigation, our contention is that the trial court did not properly apply the mitigating factors of strong provocation. Substantial grounds tend to excuse. Was provocation argued? How do you mean, your honor? Well, he continued to argue or claim that he wasn't the party who did it. And if he wasn't the party who did it, then did he argue, did his attorney argue that hypothetically, even if he were the murderer, there is enough provocation based upon the evidence presented by witnesses to indicate that this should be more in the minimum range instead of the maximum range? I don't recall the attorney specifically making that argument. However, a defendant, even though he did and does still maintain his innocence, he's entitled to be sentenced based on the evidence that the court is sentencing him on and not on a court's misinterpretation of that evidence. Well, what's the misinterpretation? Well, if I could briefly go into the facts, I think I could explain how the court misinterpreted it. By two neutral witnesses being Bethany Mead and Ralph Hall, by all accounts, Mr. Esop, who is a murder victim in this case, was an aggressive and angry driver. He was found to have a blood alcohol level of .138. Bethany Mead saw Mr. Esop pursuing the defendant, Mr. Anderson, on Alpine. Mr. Esop was angry, was making hand gestures, used the F-bomb according to her, cut off Mr. Anderson, was driving erratic. So up until that point, I would say that that's provoking. It's rogue rage, but perhaps not highly provoking yet. This conduct didn't stop there. Mr. Esop, according to Mr. Hall, was chasing Mr. Anderson. A high rate of speed down Alpine, and they eventually turned down a street called Hyatt and went around an O'Reilly Auto Parts store. There, Mr. Esop continued his pursuit of Mr. Anderson, got out of the car, closed the door. By all accounts, his keys were no longer in ignition, so he took his keys with him and went up and confronted Mr. Anderson, who remained seated in his car. So up until this point in time, it appears that Mr. Anderson was just a victim. He was being chased by an irate, drunken person engaged in rogue rage. And he would have had every reason to fear that someone doing that and then actually leaving his vehicle and walking up to his car could be a very dangerous person. If the defense counsel was ineffective for failing to raise the issue of provocation, would it have made any prejudicial difference since the judge said something to the effect that this type of provocation happens all the time? Well, yeah, and I think that's where the court is wrong. That's why I think had counsel more strongly pursued it. You mean this hasn't happened to you once or twice? Oh, certainly. I think everyone's met someone who's cut them off, flipped them off, swore at them. Again, that would be provoking, and I don't think that that would necessarily be a mitigating factor. However, it is not an everyday occurrence, contrary to the judge's finding, that the person would be drunk doing this, that the person would engage in a high-speed chase of you and would actually, at the end of that high-speed chase, get out of the car and walk over and confront the person. So, you know, I think the line of provocation is, yeah, initially just provocation when it's just hand gestures and swearing and even perhaps some cutting off, but it turns into strong provocation at the point when Mr. Esop started chasing Mr. Anderson in the high-speed chase and when he got out of the car and confronted him. Well, what prevented Mr. Anderson, who, according to one witness, is sort of the car's in front of him and the car cuts him off, Mr. Esop cuts him off, gets out and starts walking. What prevents him from backing up and taking off? I'm not sure. No one knows exactly what happened there, but I don't think that anything necessarily had to prevent him. I mean, first of all, I think with Esop being the aggressor, I believe that Mr. Anderson would have the right to stand his ground. But now he has a car. If Mr. Esop is walking, the car now is the more significant instrument of violence. Get out of there. Sure. Why does one stay if there's concern? But that would be why Mr. Esop is convicted of murder. We're not looking for a complete exoneration or saying that Mr. Anderson made all the proper choices. What's at issue here is just simply whether what Mr. Esop did was strongly provoking or not. Yes, certainly it's possible that Mr. Anderson could have had other options. Could have had what? Other options as far as being. But it's also possible that when he went to the O'Reilly Park store that he was trying to get to a safe place or that he was just going to where he was going as far as shopping. So we don't know the exact circumstances. But it doesn't have to amount to a full right to self-defense or even, by the case law, even a second-degree murder. Did the defendant seek an instruction for second-degree murder? No, he did not. But again, I don't believe that his trial strategy affects the judge's allegation to fairly sentence Mr. Anderson. That may be true. But if he had submitted and the court had admitted into consideration for the jury the second-degree murder charge, it is arguable that they would have come back with a second-degree murder conviction instead of a full murder conviction. It is arguable. So what are we waiting for, a post-conviction petition, or should you have raised this before? Yeah, I mean, I guess it's possible, Your Honor, but my thought is that trial strategy and the defendant's obligation to go for an all-or-nothing defense and without knowing counsel's reasons for not pursuing that, that, yeah, it would be more a post-conviction petition claim. Well, if I have the facts right, we once or twice confused Aesop and Anderson and who did what. After the shots were heard and Mr. Aesop falls, Mr. Anderson drives away. Yes. So even if he was going to go shopping at O'Reilly's, he changed his mind. Right. He changed his mind earlier, is my point. Right. I mean, well, obviously after the shots were fired, everything changed, and for whatever reason, again, he maintains his innocence, but putting this in the state's evidence, it would be reasonable to assume that some of that position would be afraid, perhaps want to avoid being caught thinking that he might have overstepped reasonable bounds. Who knows? But there was no testimony by Mr. Anderson that he was afraid, that he was concerned. It was the state's case, and it went to the jury, correct? Correct. All right. Yeah. So what was the judge then going to use to make that determination if he has nothing? As a sentencing hearing? Yes. He has nothing to, because the only thing we can look at from the facts are ASAP walks up, we don't, nobody said they saw a gun at that point, did they? No. And so we have to assume there are words being exchanged. Does anybody here know? Well, I mean, the only evidence is up until the point the shots were fired was that Mr. ASAP was the aggressor and Mr. Anderson was doing nothing wrong. As they stood or sat, one sat and the other stood close, did anybody hear what was said? No. Did anybody see a weapon? No. Did anybody see a punch throw? No. The one witness, I think, it all happened very quick. It seems that. Well, most of the time. Yeah, it seems that they pulled up, he looked away. In fact, the witness didn't even see whether Mr. ASAP ran or walked up to the car. Apparently he looked away and then we looked back. ASAP was standing right at Mr. Anderson's car. So, yeah, it would be based on that and based on the judges essentially misinterpreting the facts. I mean, his findings, and I got some of them here, he said the provocation is no greater than that experienced by any one of us on any given day. I think we kind of already went over that. It's not common to have a drunk and irate person in a high-speed chase with you and hopping out of the car and confronting you. The judge found that Mr. Anderson was hunting down ASAP and shot him dead for any offenses on the roadway. I don't think that's what the facts show. In fact, it's the opposite. Up until that point, if anything, it was Mr. ASAP hunting Mr. Anderson down. And he was only shot after it appears that Mr. ASAP was the aggressor and went up to the car. The judge also defined Mr. Anderson's behavior as antisocial behavior in the extreme. I do not believe that that's a fair characterization of the facts, given all of this evidence that essentially Mr. Anderson was doing nothing wrong up until the time of the shooting. Well, is there anything else in the PSI that would indicate some factual accuracy of the antisocial claim here by the judge? No, I mean, Mr. Anderson had some drug convictions, I believe, but nothing, to my recollection, of violence. Nothing. I think this might be a different situation if he had a history of violence and it was escalating. Then it would be understandable. Well, isn't having three drug convictions and carrying a gun somewhat antisocial? Yeah. I mean, I guess it depends on how you define it. But I would say, no, I mean, to me, in my mind anyway, antisocial is being a threat to people. And there is no evidence that Mr. Anderson was any threat to anyone. Other than having the gun required. Right. I mean, correct. I mean, ultimately. But my point is that he was, all the evidence is that he was just going about his business until Mr. Esopp engaged in this road rage conduct and pursued him. And also the judge stated that Mr. Anderson shot Esopp with less decorum than would be afforded a straight dog. I think that's a little bit of an exaggeration as far as what occurred here. And, again, that Mr. Anderson, under the state's facts, was doing nothing wrong. And the shots didn't occur until he was actually confronted by a drunk and irate man engaged who had followed him. Thank you. Thank you. Thank you. Ms. Diaz. Good morning, Your Honors. Counsel Amy Diaz on behalf of the people. We perceive the issue today as being a different one than the defendant does. Obviously the issue he raises on appeal and would like discussed today is that the trial court failed to consider certain factors in mitigation. We address the merits of that alleged argument in our brief, and we stand by our position that the trial court properly applied the factors in mitigation and or properly considered them and refused to apply them, but did not abuse its discretion in doing so. And it's pretty clear that he did. Judge McGrath did consider them because he says that he doesn't see any strong provocation here or any strong provocation unusual to circumstances like this. Exactly. And he did so. First of all, the trial court doesn't have to say that it has considered all of the factors in mitigation and aggravation. It is presumed to have done so unless the evidence indicates otherwise. But here, Judge McGrath went through the factors in mitigation specifically and said that he considered them. And he did so without the benefit of counsel offering any argument on those points. And in defendant's opening brief, he says that the only thing that counsel argued in the post-sentencing motion was that the sentence was excessive. So for defendant to stand here today or for counsel to stand here and say that he doesn't remember or that counsel below may or may not have argued these factors in mitigation is a little strange to me. Because in the opening brief, on page 15 of his opening brief, counsel acknowledges that the only thing that trial counsel argued was that the sentence was excessive. Was that the sentence was excessive? I'm sorry. Well, it would be difficult, I think, for counsel to argue maybe otherwise when defendant's position was I didn't do this. You know, I did not do this. So it's like arguing in the alternative almost. And we do that in a lot of civil cases. But I either murdered or I didn't murder. Is a little different, correct? I would agree that it could have diluted the defendant's statement and allocution because he maintained his innocence. But counsel could have argued, as he did in his post-sentencing motion, because he argued in the alternative that even though he maintained defendant's innocence, the sentence was excessive. He could have done the same for these factors in mitigation, and he did not do that. And Judge McGraw addressed them. Anyways, I disagree with hunting the victim down. I didn't see too much evidence that the defendant hunted down Mr. Ezoff and killed him. But I don't think that that particular poor choice of words or whatever we want to call it necessitates or even supports any finding that the trial court abused its discretion. But I think the bigger issue here is that counsel didn't address this below. Appellate counsel did not address this in his opening brief and then waited until the reply brief to assert these contentions. And why? Because he argued that the state can also forfeit claims. And personally, I know that because when I have inadvertently forfeited claims, the procedural default has been held against me in very detrimental cases. And for counsel to engage in this type of gamesmanship, it's just unbelievable to me. Because I know that if I were to do something that deliberately egregious, I would probably be held to a procedural default. The state would, and we should be. The fact that counsel relies in his reply brief on Williams to say that the defense can raise clean error in the reply if the state asserts forfeiture in its response of pleading, I think is based on a misreading of Williams. Because in Williams, our Supreme Court allowed the defense to do so in the reply brief in the interest of justice. When I read Williams, I didn't see that as encouraging counsel to engage in gamesmanship, especially in a case such as this. Well, I'm not sure that they suggested gamesmanship, but they said, look, this can be done. Maybe we don't necessarily agree how it was done, but it still is a valid point that could be raised. I wouldn't, yeah, I wouldn't disagree, but I think it could be raised. And I understand why it could be, because the state can also forfeit forfeiture. And as I said, I understand that. But to wait to see if the state is going to assert forfeiture, that delays the appellate process. It can cause undue delays. This court, depending on the case, may want to order additional briefing. We may have to unnecessarily extend the time. What usually happens is when it's done, the party who in your situation would be the state would ask to file a certify to address the issues, which is only fair. And I contemplated that. The problem, especially with appointed counsel, is that if appointed counsel fails to do something that appointed counsel should have done in the initial brief and then realizes that it, by the time it comes to the final reply, that to sit on that manager, keep quiet, keep silent, only acerbates the ineffectiveness of appellate counsel with regard to the appeal. So now you not only have a postconviction petition where trial counsel is ineffective, you have a postconviction petition where appellate counsel is insufficient. And the record seems to reflect that at least insofar as one fact-finding made by a trial judge where he suggested that this type of scenario is typical everyday experience and is not provocation, I would tend to disagree and suggest that I frankly don't know anybody who has had this scenario take place. They've had cutoffs and cut-ins. I've even had, now that I know what it's called, break-ins where somebody will pull in front of you and they'll put their brakes on to see if you spin out trying to avoid hitting them. But there is something that speaks to me that says that the judge made a mistake when he said that this is a type of situation that everybody experiences. It's a day-to-day occurrence. Now, maybe it's day-to-day to the extent that 1 in 10,000 or 20,000 people experiences this in a day, but it still seems erroneous. Whether it's prejudicial is something else. And whether or not there's a procedural default forfeiture or waiver, who knows? There's a problem here. We would disagree with... Well, we maintain that there was no prejudice, even if this were to advance... First of all, there are many things I'd like to address. But one of the things that I intended to address was what Your Honor just brought up. By failing to bring up these claims in his opening brief, appellate counsel can, if this becomes a pattern, effectively just build in an effective assistance of appellate counsel into a case if he can eventually prove prejudice. I don't think prejudice can be proven here, but it's basically... That's what it is. That's one of the problems. The other problem is the state, in the response of pleading, has to anticipate what, if any, specific plain error arguments counsel will be raising in the reply brief. His reply brief was much more specific. I could have sought leave to file a cert reply, and we decided against it. But, again, this is just delaying the appellate process, and it's delaying the inherent expense. When you say you forfeited, how did you forfeit it? How did who forfeit? I'm sorry. I thought you said that you forfeited this issue. Oh, we did not. I'm going to misunderstand you. Oh, I said I have forfeited issues before, and the procedural default has been held against me. I very much raised it in my response of pleading that counsel forfeited this below and on appeal. Well, usually forfeiture means that he raises the issue about provocation in the first instance, and you don't argue in your appellee's brief that that argument is forfeited below. Correct. Okay, so that's not the typical scenario in this case because you said he raised it for the first time in a reply brief as opposed to raising it the first time in his initial brief. Correct. So, I'm not quite sure I understand why you consider this to be a forfeiture of a forfeiture. Well, I do not consider my having forfeited it. Because I'm usually the appellee, I am not as benefited or put another way, they aren't as prejudiced as you would be or the state would be? Not necessarily because I'm the appellee, but I have been in situations where even when they have raised something and then I have failed to address it specifically, which is even inadvertently, the procedural default has been held against me, as it should be. There is a case that's at least 25 years old, more like 28. Yes. Supreme Court said something to the effect that it doesn't go to waive, forfeiture went to waiver, said that the fact that the state waived something, they can waive waiver in the interest of justice. We should go look the case up because basically what it does is it creates a grandfather key for every problem relating to waiver and forfeiture. Because it stands to the proposition that there is authority for allowing the court to consider any argument that was waived. And waiver is worse than forfeiture because it's a knowingly voluntary departure or giving up. So you should take heart by the fact that there is a Supreme Court case that allows you to send your soul. Thank you, Your Honor. Thank you. I will take that into account, but we do still maintain our position that counsel, that the defendant should not get the benefit of having this court look at the merits of his argument because of his deliberate failure. To attempt to hide this argument from the court and the people in the event that the people would not notice. I mean, in his retirement, he says that because the state can forfeit, we can wait to see if the state will forfeit the forfeiture argument before asserting plain error. And we're just frankly baffled by that. And we hope this court honors the procedural default. And as to the merits, defendant, I think Justice Hutchinson made some, she asked some great questions that get to the heart of what I would say as far as the merits. Defendant had approximately 15 minutes between when this altercation, someone, Bethany Mead saw this altercation occurring and when he shot the victim. That's enough time to call the police. At least in one instance, the victim cut off defendant and was driving in front of defendant. Presumably defendant could have stopped the car then driven somewhere else. But no, he continued to follow the victim. And then when the victim got out of his car, the defendant, instead of driving away, he's still in his car. He stays in the car and then shoots. What if he had taken his car and hit Mr. Ezek instead of using a firearm? Well, his sentence would definitely not, probably, not definitely, it probably wouldn't be what it is, but it's still anti-social behavior in the extreme. Well, a car is a much more deadly weapon than a gun, whether you know it or not. And if he didn't buy it. I mean, if we're using hypotheticals, the wisest thing for him to do would have taken his car, put it in gear and run it at Mr. Ezek and stop short. And maybe Mr. Ezek might get the idea that maybe he should get back in his car. If he survived, then. I'm not saying hit him, I'm not saying run him over, I'm saying use your car as a weapon instead of your gun. But that's, to me, the most reasonable, logical argument here if you're going to talk about defending yourself against a pedestrian. Shooting is not the answer. Okay, your time is up. I hope you learned a lot. Well, thank you, Your Honors, and we ask the Court to affirm the judgment below. Thank you. Thank you. Mr. Miller. Any comments about using a car as a lethal weapon against someone? Yes, that would also go to part of my argument is the sentence not only violated some certain statutory mitigation factors, but it's also just excessive. Yeah, personally, Mr. Anderson would have been looking at a 20 to 60 range, and this would be a maximum sentence. He wouldn't have the 25-year add-on. Correct. But I'm saying, you know, so a big part of the add-on for the shooting, I mean, there's already a significant, I did the math, which I think might be slightly off in my brief, because I think it included his other convictions, but just looking at this conviction alone, I believe he was 32 when he was incarcerated, so add that to the 60, he'd be 92 when he gets out. And if the judge would have given him the minimum, 45 years, make him 77 years old. 77 is a very significant sentence, and also adding 15, that's a very significant additional sentence the judge tacked on to the minimum. I mean, a 15-year sentence at 100%, back in the day, murder was 20-year minimum at 50%. That would be 10 years minimum for a murder. What he added on is 150% of an old murder sentence. It's a very significant add-on, and essentially it makes a difference that could turn what now is a de facto natural life sentence into something where there may be some hope at the age of 77. But Mr. Anderson is not a juvenile at the time of the offense. Correct. So that's not a critical issue right here. It's important to Mr. Anderson, but not as a matter of law. Right. Why does plain error come up for the first time in your reply brief? Well, I mean, again, our brief was primarily kind of following up on its excessive sentence argument and that the factors were voided. And contrary to what the state says, that we engage in gamesmanship. I mean, I guess I could say that the state's engaged in gamesmanship. I say it was weighed by not being raised down there. The fact of the matter is the state has to raise forfeiture in order for it. You know, we could raise it first, certainly, but they could also forfeit forfeiture by not raising it. And I think the case law is pretty clear that opposing counsel said in the past that she hadn't raised it. And that the court had found that they forfeited forfeiture. And it's, frankly, not our job to hold the state's hand and to, you know, preserve an issue when they're attacking us for forfeiture for not raising something below. But if you're purposely going to withhold it, hoping that you get a fresh scrub assistant who's going to forget it, how is that serving your client? I don't think that's what's going on here. We're not hoping for a... Well, maybe not here, but, I mean, if we take these arguments just... I mean, the state can engage in whatever type of strategy they want. You can't argue plain error unless you raise it somewhere, right? Right. And he did. And you finally did. Right. And there's nothing wrong with that. There's nothing wrong with waiting for the state to raise it and not raising it. And as counsel acknowledged, if she feels there's any more additional information on the subject, she can move to file supplemental briefing. So... But essentially all we're asking for is Mr. Anderson should be sentenced based on what actually occurred and not the judge's misconstruction of what occurred. And whether that's a strong provocation, aggravating fact, or just simply misconstruing the facts, he's entitled to be sentenced based on the facts as they occurred, not on the judge's exaggerated interpretation of facts such as this is a common occurrence. Once again, the judge heard the witnesses testify that there was shouting. There was loud shouting, right? They appeared to be talking, maybe arguing. I don't think... Well, that was... That's not my... My recollection is very quick. There may have been some shouting, but I don't think it would have been a talking situation. Mr. Aesop isn't here to tell us. So the judge heard it from somewhere, and he didn't hear it from Mr. Anderson. So he had to hear it from the witnesses, right? Correct. Okay. So if... And there's driving. We apparently have some driving that people see. What else does he have to go on other than what those witnesses have told him about what occurred? And what else could Mr. Anderson have done to prevent this from happening, this murder from happening? Well, real quick, as far as what he could have done to prevent it, going to the Calhoun case that I cited, which the state was also outraged by that I cited the case. In that case, the defendant kidnapped and basically tortured for a few hours and then eventually killed a person who they thought... whom she thought had molested her child. So you could say the same thing in Calhoun. Oh, well, the defendant could have reported to the police. There are a lot of better options than kidnapping and torturing and murdering someone. And yet the Calhoun court found that there was strong provocation. So I think you can't really commingle those two issues. The strong provocation exists despite whatever other options Mr. Anderson may or may not have had. Injury to your car versus injury to a child. There's a significant difference. But this was immediate. This was not just injury to the car. This was being pursued in a high-speed chase by a stranger engaged in road rage. And then the person actually coming out to the car. So even if he had left at that point, he was still being in a high-speed chase by a stranger. But nothing happened. Unfortunately and fortunately, it depends on which side you're on, nothing happened during that high-speed chase. Nobody got hurt. Yeah, nothing happened. Right. Then again, I'm not sure how long he's supposed to go on a high-speed chase. No. If there are no other questions? Nope. Thank you. We will take the case under advisement. There will be a short recess. We have another case on the call.